## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JAMES WESTRAY, # N-96339, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 19-cv-728-NJR |
| | ) | |
| D.D. BROOKHART, | ) | |
| | ) | |
| Respondent. | ) | |

## <u>MEMORANDUM AND ORDER[1]</u>

**ROSENSTENGEL, Chief Judge:**

In November 1998, Petitioner James Westray pled guilty in Williamson County, Illinois, to two counts of murder. (Doc. 1). He chose to have a jury decide his eligibility for the death penalty; he was found eligible and was sentenced to death on February 9, 1999. His sentence was later commuted to life without parole by former Illinois Governor George Ryan.

Westray is now in the custody of the Illinois Department of Corrections at Lawrence Correctional Center. On July 3, 2019, he filed this action seeking habeas corpus relief pursuant to 28 U.S.C. § 2254, claiming that he was denied the effective assistance of counsel because the attorney who represented him during the plea and sentencing proceedings failed to investigate or present mitigating evidence at the sentencing hearing, and his post-plea counsel failed to raise the issue of plea counsel's ineffectiveness. (Doc. 1, pp. 19-23).

Respondent filed a Response (Doc. 14) and numerous exhibits (Doc. 15). Westray replied (Doc. 19) and filed a motion for an evidentiary hearing. (Doc. 20). Respondent did not respond to that motion.

---

[1] Citations in this Order are to the document and page numbers assigned by the Case Management/Electronic Case Filing ("CM/ECF") system.

For the reasons discussed below, the Court finds that an evidentiary hearing is not warranted, and Westray's Section 2254 Petition will be denied.

## RELEVANT FACTS AND PROCEDURAL HISTORY[2]

### *Circuit Court Plea and Penalty Phase*

Westray was charged with four counts of murder for the August 1998 shooting of Elizabeth Opatt while he and a companion (Keith Cook) robbed the Williamson County bar where she worked. (Doc. 15-5, p. 1). He entered an open plea of guilty to two of those counts, and the State dismissed the others. *Id.*; (Doc. 15-11, p. 1). A jury found Westray eligible for the death penalty based on the murder having been committed during a robbery.

At the hearing on aggravation and mitigation, the State presented evidence on Westray's participation in 1989 at the age of 18 in a string of residential burglaries and robberies carried out by a group of young men under the direction of an older man. (Doc. 15-11, p. 1). Westray eventually cooperated with the investigation of those crimes and spent time in prison. *Id.* at 3. Aggravating evidence also included Westray's more recent criminal history, including two robberies in 1997 and 1998, as well as his unexecuted plot with a police informant to commit another robbery where he planned to "shoot the lady at the register." *Id.* at 1-2. After Westray's arrest for the Opatt murder, he attempted to escape from jail, managing to get to the building's roof through the duct work. When confronted, he jumped off the roof, fell three stories, and was hospitalized. *Id.* at 2.

Westray's first attorney, who represented him throughout the plea and sentencing

---

[2] This summary of the facts is derived from the detailed descriptions by the Illinois Appellate Court, Fifth District, in its Rule 23 Orders affirming the denial of Westray's motion to withdraw his guilty plea (Doc. 15-5, (*People v. Westray*, No. 5-06-0678, Sept. 23, 2008)) and affirming the dismissal of Westray's postconviction petition. (Doc. 15-11, (*People v. Westray*, No. 5-14-0457, 2018 IL App (5th) 140457-U, April 30, 2018)). The state court's factual findings are presumed to be correct unless rebutted by clear and convincing evidence, which Westray has not done. 28 U.S.C. § 2254(e).

proceedings, presented mitigating evidence including testimony from Westray's mother and a family friend on the years of physical and emotional abuse inflicted on him by his stepfather. (Doc. 15-5, pp. 2-3). One beating was so severe that the stepfather broke the back of a reclining chair that Westray fell onto during the beating. The abuse resulted in child welfare officials twice removing Westray from the home, but he was later returned. *Id.* at 2. After Westray was released from his first prison sentence, he married and became involved in a Christian ministry working with inner-city youth and gang members. The couple later divorced, and Westray became depressed and began drinking and spending time with the friends who had been involved in the 1989 criminal activity. *Id.* Westray testified that the 1997 and 1998 robberies that preceded the murder were the ideas of Tracy and Keith Cook, with whom Westray and his girlfriend were living at the time; they had moved in with the Cooks due to financial difficulties. *Id.* at 3. Keith Cook was Westray's codefendant in the Opatt murder case. The jury found the mitigating evidence was not sufficient to preclude the imposition of the death sentence on Westray. *Id.*

### *First Direct Appeal and Remand*

Westray appealed directly to the Illinois Supreme Court, arguing that he was not properly advised of his appeal rights pursuant to Illinois Supreme Court Rule 605(b). He also challenged a jury instruction at the death penalty eligibility phase and claimed that the State improperly argued that his guilty plea amounted to a confession that he was the shooter. (Doc. 15-11, p. 3). While this appeal was pending, Westray filed a *pro se* postconviction petition in April 2000 claiming that plea counsel was ineffective on several grounds. (Doc. 15-11, p. 3; Doc. 15-13, pp. 426-431). Postconviction counsel was appointed but the parties agreed the matter should be held in abeyance until the direct appeal was decided. (Doc. 15-11, p. 3).

In September 2000, the State conceded that Westray had not been properly admonished

under Rule 605(b), and the Illinois Supreme Court remanded the case to the trial court for proceedings in compliance with that Rule. New counsel was appointed for Westray. After Westray was properly admonished, he filed a motion to withdraw his guilty plea on the grounds that it was not knowing and voluntary and plea counsel failed to sufficiently investigate mitigating evidence. (Doc. 15-11, p. 3; Doc. 15-13, p. 534).

In July 2001, the trial court denied Westray's motion to withdraw his plea, and he appealed again to the Illinois Supreme Court.

### Second Direct Appeal and Commutation of Sentence

In January 2003, while Westray's appeal was still pending, then-Governor George Ryan commuted his death sentence to natural life in prison. (Doc. 15-11, p. 3). The Illinois Supreme Court initially dismissed Westray's appeal but later reinstated it and transferred the appeal to the Illinois Appellate Court, Fifth District, where it was docketed under No. 5-06-0678. (Doc. 15-11, p. 3; Doc. 15-5).

The appellate court considered Westray's argument that his guilty plea was not knowing or intelligent because he was not advised that the plea would be used as an admission that he inflicted Opatt's fatal injuries, an element that the State was required to prove in the death penalty eligibility hearing. (Doc. 15-5, pp. 2-4; Doc. 15-11, p. 3). On September 23, 2008, the Fifth District affirmed the trial court's denial of Westray's motion to withdraw his plea, finding no abuse of discretion, and denied his request for a new eligibility hearing. (Doc. 15-5). The court concluded that Westray's plea was not an admission or stipulation that he was eligible for the death penalty, and the State put forth sufficient proof to support the jury's finding of eligibility. *Id.* at 3-4. Further, the jury was properly instructed on the elements for death penalty eligibility. *Id.* at 4-5. Westray's Petition for Leave to Appeal ("PLA") to the Illinois Supreme Court was denied on January 28,

2009. (Doc. 15-6).

### *Postconviction Proceedings*

In 2013, Westray's appointed postconviction counsel filed an amended petition, arguing that plea counsel was ineffective for failing to investigate and present available mitigating evidence from non-family witnesses, post-plea counsel was ineffective for failing to raise this issue, and his claim was not rendered moot by the commutation of his death sentence because he could have received a term of 20-60 years if the death penalty had not been imposed. (Doc. 15-11, pp. 4-5). Postconviction counsel obtained a school counseling record documenting abuse of Westray by his brother. She attempted to locate two witnesses without success, and the trial court denied her motion for the appointment of an investigator to search for them. *Id.* at 4.

In August 2014, the trial court dismissed the postconviction petition on the basis that the ineffective assistance claim arising from the aggravation/mitigation hearing was mooted by the commutation of Westray's death sentence. (Doc. 15-7; Doc. 15-11, p. 4). Westray appealed.

On April 30, 2018, the Fifth District affirmed the dismissal of Westray's postconviction petition, concluding that the issues he raised became moot when his death sentence was commuted. (Doc. 15-11 (Appeal No. 5-14-0457), pp. 4-5). The court concluded that it was bound to follow Illinois Supreme Court precedent which held, on virtually identical facts, that the governor's commutation of a death sentence replaces the judicially-imposed sentence "with a lesser, executively imposed sentence," which is not subject to judicial review. *Id.* (citing *People v. Lucas*, 203 Ill. 2d 410 (2002); *People v. Mata*, 217 Ill. 2d 535, 541 (2005) and similar cases). Notwithstanding contrary Seventh Circuit authority,[3] the court found it "is unable to offer effective

---

[3] *Simpson v. Battaglia*, 458 F.3d 585, 595 (7th Cir. 2006); *Madej v. Briley*, 371 F.3d 898, 899 (7th Cir. 2004) (concluding that gubernatorial commutation of a sentence does not moot a challenge based on flaws at the aggravation/mitigation stage).

relief to a defendant challenging his [commuted] sentence." (Doc. 15-11, p. 4) (citing *Lucas*, 203 Ill. 2d at 418; *People v. Harris*, 357 Ill. App. 3d 330, 336 (2005)).

On September 26, 2018, the Illinois Supreme Court denied Westray's PLA. (Doc. 15-12). This habeas corpus action followed.

## LAW APPLICABLE TO SECTION 2254 PETITION

This habeas petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), which "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Habeas is *not* merely another round of appellate review. 28 U.S.C. § 2254(d) restricts habeas relief to cases where the state court determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

A judgment is "contrary to" Supreme Court precedent if the state court "contradicts the governing law set forth in [Supreme Court] cases." *Coleman v. Hardy*, 690 F.3d 811, 814 (7th Cir. 2012) (citing *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). A state court decision is an "unreasonable application of" clearly established federal law if the state court "identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Coleman*, 690 F.3d at 814 (quoting *Williams*, 529 U.S. at 407).

Federal habeas review serves as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v.*

*Richter*, 562 U.S. 86, 102-03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring)). The Supreme Court has repeatedly emphasized that the Section 2254(d) standard "is intentionally 'difficult to meet.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014), and *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)).

Even an incorrect or erroneous application of the federal precedent will not justify habeas relief; rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. "A state court's decision is reasonable, even if incorrect in our independent judgment, so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.'" *McDaniel v. Polley*, 847 F.3d 887, 893 (7th Cir. 2017) (internal citations omitted). For habeas relief to be granted, the state court's application of federal precedent must have been "objectively unreasonable," meaning "something like lying well outside the boundaries of permissible differences of opinion." *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003). (internal citations omitted).

In addition to the requirement for timely filing under the AEDPA, a habeas petitioner must clear two procedural hurdles before the Court may reach the merits of his habeas corpus petition: exhaustion of remedies and procedural default. *Bolton v. Akpore*, 730 F.3d 685, 694-696 (7th Cir. 2013). Before seeking habeas relief, a petitioner is required to bring his claim(s) through "one complete round of the State's established appellate review process" because "the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan v.*

*Boerckel*, 526 U.S. 838, 845 (1999); *see also* 28 U.S.C. § 2254(c). Under the Illinois two-tiered appeals process, habeas petitioners must fully present their claims not only to an intermediate appellate court, but also to the Illinois Supreme Court, which offers discretionary review. *Id*.

Respondent concedes that Westray's Petition is timely filed (Doc. 14, p. 7) and does not argue that his claims are unexhausted or procedurally defaulted.

**ANALYSIS**

***Effect of State Courts' Conclusion that the Commutation of Westray's
Death Sentence Rendered his Ineffectiveness Claims Moot***

The trial court and Illinois Appellate Court, applying binding Illinois Supreme Court precedent, determined that because Westray is now serving the life sentence resulting from the Governor's executive action, Westray's postconviction claims of ineffective assistance of counsel during his sentencing proceeding and motion to withdraw his guilty plea had become moot and unreviewable by the state courts.[4] (Doc. 15-7; Doc. 15-11); *People v. Westray*, 2018 WL 2063867 (Ill. App. April 30, 2018) (citing *People v. Mata*, 842 N.E.2d 686, 694, 217 Ill. 2d 535, 547 (2005); *People v. Lucas*, 787 N.E.2d 113, 119, 203 Ill. 2d 410, 418-19 (2002)). Seventh Circuit precedent holds, however, that where a Governor has commuted a state death sentence to a term of natural life, that action does not limit the reach of federal habeas review. *Simpson v. Battaglia*, 458 F.3d 585, 596 (7th Cir. 2006); *Madej v. Briley*, 371 F.3d 898, 899-900 (7th Cir. 2004) (where district court found counsel was ineffective during death penalty sentencing, and petitioner could have been sentenced to a term of years, petitioner was entitled to seek lower sentence); *United States ex rel. Harris v. McCann*, 558 F. Supp. 2d 826, 836-37 (N.D. Ill. 2008) (based on the Supremacy Clause, federal constitutional claims arising from capital sentencing hearing are not moot

---

[4] Westray's argument that the Illinois courts refused to allow him to "fully litigate his claim" and thus denied him "meaningful access to the courts" is without merit and does not present a cognizable habeas claim. (Doc. 1, p. 23).

8

regardless of commutation). Westray, like the petitioner in *Madej*, could have been sentenced to a term of 20-60 years instead of life, thus his ineffective assistance claims are not moot in the context of federal habeas review.

### Ground 1 – Ineffective Assistance of Plea Counsel at Sentencing

A habeas court must determine whether the state court's decision on the issue at hand was contrary to or an unreasonable application of federal law, or amounted to an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). In doing so, the court reviews the decision of the last state court to rule on the merits of the claim raised in the habeas petition. *Simpson v. Battaglia*, 458 F.3d 585, 592 (7th Cir. 2006); *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006).

During Westray's postconviction proceedings, the trial court never reached the merits of his ineffective assistance claims – it simply granted the State's motion to dismiss, finding the claims to be moot because of the commutation of his death sentence. (Doc. 15-7). On review of that ruling, the Illinois Appellate Court noted that it had jurisdiction to decide whether the trial court correctly determined that the claim was moot, and if it found the mootness decision correct, then the appellate court itself would lack jurisdiction to rule on the merits of Westray's constitutional claims. (Doc. 15-11, p. 4). Because the appellate court affirmed the trial court's mootness finding, it did not analyze the merits, leaving this Court with no state court decision on the merits of the postconviction claims which may be reviewed.

Respondent argues, however, that the trial court's earlier denial of Westray's motion to withdraw his guilty plea – which raised the claim of ineffectiveness of plea counsel – amounted to a decision on the merits of that issue and should be accorded deferential review. (Doc. 14, p. 8; Doc. 15-13, p. 534). Westray disagrees, asserting that his post-remand counsel did not claim

"constitutional violations for sentencing" thus the trial court could not have reviewed his claim of ineffective assistance at sentencing. (Doc. 19, pp. 1-2).

Respondent is correct that on remand, counsel's amended motion to withdraw guilty plea raised, as one of two grounds, the claim that Westray "was denied the effective assistance of trial counsel, because trial counsel failed to conduct a reasonable investigation into mitigation evidence and circumstances of the Defendant." (Doc. 15-13, p. 534). The other ground was that Westray did not knowingly and voluntarily plead guilty because he was acting on a misapprehension of the facts and the law – and this is the only issue counsel argued to the trial court when the motion was heard. (Doc. 15-13, pp. 190-222, motion hearing of July 23, 2001). The trial court's oral denial of Westray's motion to withdraw his guilty plea necessarily encompassed the denial of the included ineffective assistance claim, but the record contains no discussion, reasoning, or analysis of that issue. Similarly, the knowing/voluntary plea issue was the only matter raised in the appeal from the trial court's denial of Westray's motion to withdraw his plea, so that decision contains no discussion of the ineffective assistance claim. (Docs. 15-3; 15-4; 15-5; Appeal No. 5-06-0678).

The Supreme Court in *Harrington v. Richter* held that when a state court rejects a prisoner's federal claim without discussion, a presumption arises that the state court adjudicated the claim on its merits, unless some state law procedural principle indicates otherwise. *Harrington*, 562 U.S. 86, 98-99 (2011). This presumption also applies when the state court's decision expressly addresses some but not all of a prisoner's claims. *Johnson v. Williams*, 568 U.S. 289, 298 (2013); *Lee v. Avila*, 871 F.3d 565, 571-72 (7the Cir. 2017). That is the situation here with respect to the trial court's rejection of Westray's motion to withdraw his guilty plea. Westray has not presented any information that would rebut the *Harrington* presumption, thus the state trial court's entire decision is subject to deferential review under Section 2254(d). Further, the Court is convinced

that even if it were to review Westray's claims under the more lenient *de novo* standard, he would still not be entitled to habeas relief.

Westray asserts that his plea/sentencing counsel failed to investigate or present mitigating evidence of his abusive childhood for presentation to the jury during the aggravation/mitigation hearing, thus denying him the effective assistance of counsel. (Doc. 1, pp. 19-22). He argues that counsel could have called additional witnesses to present mitigation evidence, and that a thorough investigation would have revealed the school counseling summary (found later by postconviction counsel) which discussed abuse of Westray by his stepbrother and difficult relations with his mother and stepfather. Westray identifies two potential witnesses: Randy Knox, author of the counseling summary, and Derek Flatt, who witnessed Westray's stepfather punching him and knocking him to the ground. (Doc. 1, p. 21). Westray contends that had this evidence of his abusive childhood and harmful family dynamics been presented, there is a reasonable probability that the jury would not have imposed the death sentence, and he could then have been sentenced to a term of years rather than life.

A claim of ineffective assistance of counsel must be analyzed under *Strickland v. Washington*, 466 U.S. 668 (1984). Analysis under *Strickland* and on habeas review under Section 2254 are both highly deferential. Where the state court has decided an ineffective assistance claim, the review is "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011). And because *Strickland* sets forth a general standard, "the range of reasonable applications is substantial." *Ibid.*

In order to show ineffective assistance of counsel, a petitioner must demonstrate (1) that counsel's performance "fell below an objective standard of reasonableness" ("the performance prong"), and (2) "that the deficient performance prejudiced the defense" ("the prejudice prong").

*Strickland*, 466 U.S. at 687-88. A petitioner must satisfy both prongs of the *Strickland* analysis to be eligible for habeas relief. There is no mandatory order for the analysis, and a habeas court is not required to address both prongs if the petitioner has failed to make a sufficient showing on one. *Id.* at 697.

Under the first *Strickland* prong, the Court must inquire into "the objective reasonableness of counsel's performance." *Harrington*, 562 U.S. at 110. "*Strickland* does not guarantee perfect representation, only a 'reasonably competent attorney.'" *Id.* To avoid the temptation to second-guess counsel's assistance, there is a strong presumption of adequate assistance and the exercise of reasonable professional judgment. *Id*. at 107-08. Indeed, a petitioner's right to effective assistance of counsel is violated only when counsel's conduct, in light of all the circumstances, "[was] outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

To satisfy the second prong, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112.

The state court is not required to give the reasons for its decision. Where the state court's reasons are not explained, a habeas petitioner must show "there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). As noted above, where the federal issue was presented to the state court, an unexplained decision denying relief is presumed to have been adjudicated on the merits in the absence of an indication to the contrary. *Id*. at 99. The habeas court must "determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible

fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Id.* at 102; *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2560 (2018) (per curiam).

"By its terms, [Section] 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in [Sections] 2254(d)(1) and (d)(2)." *Harrington*, 562 U.S. at 98. The question for this Court is not whether it believes counsel was ineffective, but rather, whether the state court's adjudication of the matter was an unreasonable application of *Strickland*. *See Harrington*, 562 U.S. at 101. Section 2254, as amended by AEDPA, "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further." *Harrington*, 562 U.S. at 102. As the Seventh Circuit has observed, "the bar for establishing the unreasonableness of a state court's application of *Strickland* 'is a high one, and only a clear error in applying *Strickland* will support a writ of habeas corpus.'" *Jones v. Brown*, 756 F.3d 1000, 1007 (7th Cir. 2014) (citing *Allen v. Chandler*, 555 F.3d 596, 600 (7th Cir. 2009)).

Looking first at the performance prong, Westray insists that counsel conducted no investigation of potential witnesses other than his mother, who told the jury about the physical and emotional abuse he endured at the hands of his stepfather. (Doc. 1, pp. 20-22; Doc. 19, p. 7). His attorney did not prepare to present testimony from family friend Beth Ann Kern, and did so only after she requested to testify on the day of the hearing. (Doc. 19, p. 7; Doc. 15-13, p. 541). Westray's *pro se* postconviction petition and his mother's attached affidavit verified that the attorney told his mother she would have to do the mitigation investigation on her own, and he refused to issue subpoenas to obtain records from Westray's schools or a clinic that treated him, when those institutions refused to release records to her. (Doc. 15-13, pp. 427, 431). The record

does not reveal whether the trial court considered that information when it denied Westray's motion to withdraw his plea, but the documents were filed in April 2000 in advance of that denial.

An attorney's "particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. "There comes a point where a defense attorney will reasonably decide that another strategy is in order, thus 'mak[ing] particular investigations unnecessary.'" *Cullen v. Pinholster*, 563 U.S. 170, 197 (2011) (quoting *Strickland*, 466 U.S. at 691). The transcript of the aggravation/mitigation hearing indicates that counsel investigated the circumstances of Westray's prior crimes, the current offense, and other witnesses' statements sufficiently to conduct effective cross-examination of the State's aggravation witnesses and to present mitigation evidence. (Doc. 15-15, pp. 929-30, 937-40, 945-48, 967-68, 972-74, 980-82, 989-91, 995-96, 1008-1072). The jury heard about Westray's acceptance of responsibility for the crimes he committed as a teenager, and his testimony that his codefendant was the one who killed the victim in the instant case. Westray's mother and friend, and Westray himself, told about his physical and mental abuse at the hands of his stepfather.

Counsel may have made a reasoned decision that the testimony about Westray's childhood trauma was sufficient to establish mitigation in that regard. Additional testimony from Derek Flatt, who witnessed Westray's stepfather beating him, could be regarded as cumulative to the other evidence of that abuse. Potential evidence from school counselor Knox was less cumulative as it would have indicated Westray was abused by his brother in addition to his stepfather, and that he had an emotionally unhealthy relationship with his parents. Counsel's apparent lack of effort to secure school or counseling records or to seek out non-family-member witnesses is troubling and could provide grounds for a reasonable jurist to find that his investigation fell short of what

*Strickland* requires.

Based on the record of mitigation evidence heard by the jury and the possibly cumulative nature of the evidence that was not presented, the trial court could have concluded that counsel's performance at the aggravation/mitigation stage was adequate. Alternatively, the court might have found counsel's performance and investigation to be deficient, but concluded that Westray was not prejudiced in light of the strength of the State's evidence in aggravation. That evidence included Westray's involvement as a teenager in six crimes (burglaries and an attempted armed robbery), as well as two armed robberies within the year prior to his arrest for murder. (Doc. 15-11, pp. 1-2; Doc. 15-15, pp. 916-1007). In the recent crimes, he took money from the owners of Pulley's Barbeque at gunpoint and stole their car, and robbed Tracy Cook's coworker on her way to deposit the day's Dollar General Store receipts. In addition, Westray met with Keith Cook and Rex Hopper to plot a future robbery, during which Westray stated his intention to shoot the store clerk during that crime and possibly kill a co-conspirator to avoid sharing stolen money with him. (Doc. 15-11, p. 2). When Westray left that meeting and police tried to arrest him, he fled. While awaiting trial in the instant case, Westray attempted to escape from jail by climbing through ductwork to the roof, where he jumped when confronted by authorities, falling three stories.

Given this evidence of Westray's serious and repeated criminal conduct, even if counsel had obtained and presented the additional mitigating evidence Westray describes, the trial court could have reasonably concluded that there was little likelihood of a different result. Such a conclusion would not have been an unreasonable application of the *Strickland* standard, which requires the petitioner to demonstrate a "reasonable probability" of a different outcome if counsel had presented the other mitigation evidence. *See Strickland*, 466 U.S. at 694. Westray does not demonstrate any clear error in the state court's presumed application of *Strickland.* A conclusion

15

that Westray was not prejudiced by his counsel's performance would be well within the boundaries of permissible differences of opinion among fairminded jurists applying *Strickland*. This Court concludes that, in view of the considerable aggravation evidence, it is not reasonably probable that the testimony of Knox or Flatt would have convinced the jury not to impose the death penalty. There is certainly not a substantial likelihood of a different result. *See Harrington*, 562 U.S. at 112.

Finally, the Court concludes that Westray is not entitled to an evidentiary hearing under 28 U.S.C. § 2254(e)(2) in this matter. The trial court held no hearing on his postconviction claim of ineffective assistance because it concluded the matter was moot. (Doc. 1, p. 22). Westray argues that the commutation of his death sentence to life "failed to provide a full remedy for the Sixth Amendment violation" because he was denied a postconviction hearing which, if he had prevailed, would have entitled him to a new sentencing hearing which might have resulted in a sentence of less than natural life. *Id.* In Westray's view, the remedy is for this Court to hold an evidentiary hearing on the ineffectiveness claims. (Doc. 1, p. 23).

Federal habeas review under Section 2254(d) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Only after the habeas court determines that a petitioner has "overcome the limitation of [Section] 2254(d)(1) on the record that was before th[e] state court" may the federal court consider whether an evidentiary hearing is warranted. *Id.* at 185. And "Section 2254(d) applies even where there has been a summary denial." *Cullen*, 563 U.S. at 187; *see also Harrington*, 562 U.S. at 100. As discussed above, Westray has not shown that the state court contradicted or unreasonably applied clearly established Supreme Court precedent, thus he has not surmounted the Section 2254(d)(1) hurdle and is not entitled to an evidentiary hearing in this Court.

Westray has not demonstrated that he is entitled to habeas relief on Ground One.

16

### *Ground 2 – Ineffective Assistance of Post-Plea Counsel after Remand*

Westray claims that his post-plea counsel, who represented him on the motion to withdraw his guilty plea after remand by the Illinois Supreme Court, failed to raise the issue of plea counsel's ineffectiveness and should have done so in a motion to reduce sentence. (Doc. 1, p. 20). Respondent counters that post-plea counsel did in fact raise the issue in the amended motion to withdraw guilty plea, which states that Westray "was denied the effective assistance of trial counsel, because trial counsel failed to conduct a reasonable investigation into mitigation evidence and circumstances of the Defendant." (Doc. 15-13, p. 534). The trial court heard and denied the motion to withdraw the guilty plea on July 23, 2001. (Doc. 15-13, pp. 190-220).

Because post-plea counsel did in fact raise the issue of the ineffectiveness of Westray's plea/sentencing counsel, Westray's second claim for relief fails. His argument that the motion to withdraw guilty plea "made no claim of constitutional violations for sentencing" is unavailing. (Doc. 19, p. 2). The very claim that his prior counsel was ineffective for failing to investigate or present additional mitigating evidence, raised in the motion, is a claim that Westray was denied his constitutional right to effective representation during the sentencing proceeding when the jury determined whether or not the death penalty should be imposed.

Further, Westray does not explain why post-plea counsel was allegedly ineffective for failing to raise the ineffectiveness of plea counsel in a motion to reduce sentence, when counsel included the claim in the motion to withdraw plea. His case was remanded to the trial court for the specific purpose of compliance with Illinois Supreme Court Rule 605(b); under that rule, a defendant convicted after a guilty plea must either move to withdraw his guilty plea or move for the trial court to reconsider his sentence before he can perfect an appeal. Counsel complied with the required procedure by presenting Westray's motion to withdraw his plea, thus allowing his

appeal to proceed.

Westray is not entitled to habeas relief on Ground Two.

### CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, this Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate should be issued only where the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

In order for a certificate of appealability to issue, a petitioner must show that "reasonable jurists" would find this Court's "assessment of the constitutional claims debatable or wrong." *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). While this Court is satisfied that its conclusions are correct, it is possible that a reasonable jurist could conclude that the state trial court's denial of the ineffective assistance claim in Ground One, without stating any reasoning, either should not be entitled to deferential review or amounted to an incorrect or unreasonable application of *Strickland*. Another court could resolve the issue differently from this Court's conclusion. The Court therefore finds that Westray has made a substantial showing of the denial of a constitutional right as to the claim in Ground One.

Accordingly, Westray is **GRANTED** a certificate of appealability as to the claim in Ground One, permitting him to appeal this Court's denial of that portion of his Petition under 28 U.S.C. § 2254. Westray shall note that in order to perfect an appeal, he is still required to file a timely notice of appeal should he wish to seek review of this order.

However, the Court **DENIES** a certificate of appealability as to Ground Two, as reasonable jurists would not dispute the conclusion that post-plea counsel raised the issue of prior counsel's ineffectiveness. Westray may reapply for a certificate of appealability on that issue to the United

States Court of Appeals, Seventh Circuit. *See* Fed. R. App. P. 22(b); 28 U.S.C. § 2253(c)(1).

CONCLUSION

James Westray's Petition for habeas relief under 28 U.S.C. § 2254 (Doc. 1) and his Motion for Evidentiary Hearing (Doc. 20) are **DENIED**. This entire action is **DISMISSED with prejudice**. The Clerk of Court shall enter judgment accordingly.

If Westray wishes to appeal the dismissal of this action, his notice of appeal must be filed with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(1)(A). A motion for leave to appeal *in forma pauperis* ("IFP") must set forth the issues Westray plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If Westray does choose to appeal and is allowed to proceed IFP, he will be liable for a portion of the $505.00 appellate filing fee (the amount to be determined based on his prison trust fund account records for the past six months) irrespective of the outcome of the appeal. *See* Fed. R. App. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Kerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. Fed. R. App. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended. Other motions, including a Rule 60 motion for relief from a final judgment, do not toll the deadline for an appeal.

**IT IS SO ORDERED.**

**DATED:  September 14, 2020**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**